UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAN DE LA GARZA, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-1715 |
| | § | |
| CLEAN OIL INNOVATIONS, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER**

Pending before the Court is Plaintiffs' Motion to Remand (Doc. 5) this suit to the 164th Judicial District of Harris County, Texas. Having considered the motion, the facts of the case, and the applicable law, the Court concludes that the motion should be granted.

**I.     Background**

On March 16, 2012, Dan de la Garza ("De la Garza") and Janus Energy Resources, Inc. ("Janus") (collectively, "Plaintiffs") filed their state court petition (Doc. 1-1) against Clean Oil Innovations, Inc. ("Clean Oil"), Oleum Chemical Corp., Todd M. Thompson, Kristin Thompson, Shabir Premji, Monaco Global, Ltd., Salima Vellani, Alana Witte, and Kempton White. According to the record, Plaintiffs have served only one party, Clean Oil (Doc. 7 ¶ 2), a Nevada corporation (Doc. 1-1 ¶ 4). In the state court petition, De la Garza is listed as a citizen of Texas and Janus as a Nevada Corporation. (Doc. 1-1 ¶¶ 2-3).

On June 7, 2012, Clean Oil, Shabir Premji, and Salima Vellani (collectively, "Defendants") filed their notice of removal (Doc. 1), basing it on the parties' diversity of citizenship. Defendants argued that

> at the time Plaintiffs commenced this action and as of the date of this filing, the corporate status of Janus is in default. Additionally, although Janus claims to be a

> party to certain agreements, it was not in legal existence at the time those putative agreements were executed. Janus does not have the right to file or join in any lawsuits and is not a proper party to this action.

(Doc. 1 ¶ 11). On July 9, 2012, Plaintiffs filed their motion to remand, arguing (i) "that a private corporation, which is in default, may still carry out and do business" in Nevada and (ii) that "corporations can seek the enforcement of pre-incorporation agreements that they have ratified." (Doc. 5 at 3).

## II. Legal Standard

Under 28 U.S.C. § 1441, removal from state court is proper only for civil actions that "originally could have been filed in federal court." *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 924 (5th Cir. 1997). This original jurisdiction must be based on either diversity of citizenship or existence of a federal question. *Id.* On a motion to remand, the burden lies with the removing party to establish that one of these bases of jurisdiction exists. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Determination of such jurisdiction is made according to the state court complaint at the time of removal, construing all ambiguities in favor of remand. *Id.*

## III. Discussion

The ultimate issue is whether, at the time of removal, Janus had capacity and standing to sue. Resolution of the capacity issue requires answering two questions: (i) whether Janus then had a legal existence; and (ii) if so, whether such existence afforded it the capacity to sue, its default status notwithstanding. If capacity is found, resolution of the standing issue requires answering a third question: (iii) whether Janus could file suit seeking enforcement of a pre-incorporation agreement. If all answers are in the affirmative, then Janus had capacity and standing to sue and is a proper party to this action, diversity of citizenship is lacking, and the

case must be remanded; if not, then diversity exists, this Court has original jurisdiction, and removal was proper. Each question must be addressed by reference to the law of Nevada, the state of incorporation. Fed. R. Civ. P. 17(b)(2) ("Capacity to sue or be sued is determined . . . for a corporation, by the law under which it was organized."); s*ee also Askanase v. Fatjo*, 130 F.3d 657, 670 (5th Cir. 1997) ("Federal courts sitting in Texas apply the law of the state of incorporation when a corporation's internal affairs are implicated.").

Resolving issues of Nevada law requires following the final decisions of the state's highest court. *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010). Absence of a clear decision requires making an *Erie* guess, predicting "how that court would resolve the issue if presented with the same case." *Id.* (quoting *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 954 (5th Cir. 2009)) (internal quotation marks omitted). "In making the *Erie* guess, [the court] may consider, among other sources, treatises, decisions from other jurisdictions, and the 'majority rule.'" *SMI Owen Steel Co., Inc. v. Marsh USA, Inc.*, 520 F.3d 432, 437 & n.3 (5th Cir. 2008) (noting that "Nevada is one of eleven states that do not have any intermediate appellate courts").

The answer to the first question can be found in Title 7 of the Nevada Revised Statutes, which governs private corporations. In Nevada, corporate existence commences "[u]pon the filing of the articles of incorporation":

> *From the date the articles are filed, the corporation is a body corporate*, by the name set forth in the articles of incorporation, subject to the forfeiture of its charter or dissolution as provided in this chapter.
> . . . .
> *The filing of the articles of incorporation does not, by itself, constitute commencement of business* by the corporation.

Nev. Rev. Stat. § 78.050 (emphases added). In addition to defining when a corporation becomes "a body corporate," this section draws a distinction between that moment and the

"commencement of business." This distinction is relevant to the second question discussed below; for the moment, it is sufficient to recognize that filing the articles of incorporation equates to corporate existence. Once in existence, every corporation is entitled "[t]o sue and be sued in any court of law or equity," § 78.060, and, even after dissolution, a "corporation continues as a body corporate for the purpose of prosecuting and defending suits," § 78.585. Read together, these sections show that the date on which a corporation gains the capacity to sue and be sued is that on which it files its articles of incorporation. For Janus, that date is January 31, 2012, (Doc. 7-1 at 2), early enough to answer the first question in the affirmative.

The second question is whether Janus's default status nonetheless precluded it from exercising its right to sue. The Nevada Supreme Court resolved a similar issue in a similar context, holding that "[a]dministrative revocation of a domestic limited liability company's charter suspends the entity's right to transact business, not its ability to prosecute an ongoing suit." *AA Primo Builders, LLC v. Washington*, 245 P.3d 1190, 1192 (Nev. 2010).

> The substantive question . . . is whether a Nevada limited liability company whose charter is revoked, then reinstated, may litigate a pending suit to conclusion. The answer is yes . . . . First, the right to "transact business" that is forfeited on charter revocation does not normally include an LLC's capacity to sue and be sued. Second, reinstatement restores the entity's capacity to conduct itself as a limited liability company retroactively to the date of revocation; this includes the right to litigate pending cases to conclusion.

*Id.* at 1195. There are, however, some factual differences between that case and the one before this Court.

First, *AA Primo Builders* specifically interpreted Nevada statutes covering limited liability companies, Nev. Rev. Stat. § 86.011 *et. seq.*; at issue here are the sections covering private corporations, Nev. Rev. Stat. § 78.010 *et. seq.* In its decision, the Nevada Supreme Court recognized the distinction between these statutes:

> *Clipper Air Cargo v. Aviation Products*, 981 F. Supp. 956, 958 (D.S.C. 1997), inferred a similar result from the corporations code analogues to NRS 86.275 and NRS 86.505 (NRS 78.175 and 78.585). We leave for another day the significance, if any, of the language differences between the corporations code and the limited liability company statutes concerning the proceedings that may be had following charter revocation.

*Id.* at 1196 n.3. Second, the corporation in *AA Primo Builders* was active at the time litigation began and only later went into default and had its charter revoked; here, Janus was in default when litigation began.

The significance of these two differences, however, is more than mitigated by the third: both *AA Primo Builders* and *Clipper Air Cargo* addressed corporate affairs after revocation, while Janus, though in default, never had its charter revoked. In Nevada, revocation of a corporate charter does not occur until over a year has passed while in default status, and, at that time, only a corporation's "right to *transact business* is forfeited." § 78.175(2) (emphasis added). Put another way, no rights are forfeited merely upon default, and the statute makes no reference to forfeiture of the right to sue, even upon revocation. Furthermore, on July 31, 2012, the Nevada Secretary of State recognized Janus's cure of its filing deficiencies and changed its corporate status to "active." (*See* Doc. 8 ¶ 1; Doc. 8-1 at 1-2). In the case of reinstatement after revocation, § 78.180 allows "relat[ion] back to the date on which the corporation forfeited its right to transact business . . . and reinstates the corporation's right to transact business as if such right had at all times remained in full force and effect." The statute's silence as to relation back after curing a default only bolsters what this Court believes: that because the capacity to sue is not forfeited upon default, there is no such right to reinstate. Thus, at the time of removal, Janus was a body corporate, its existence gave it the capacity to sue, and its default status did not deprive it of that capacity.

The final question, whether Janus has a "personal stake" in a pre-incorporation agreement

such that it can file suit to enforce it, *see Warth v. Seldin*, 422 U.S. 490, 498 (1975) (defining the essence of standing as "whether the litigant is entitled to have the court decide the merits of the dispute"), can be answered easily, as the Nevada Supreme Court has made clear that the answer is yes. *See Jacobson v. Stern*, 605 P.2d 198, 201 (1980) (holding that "[u]nder Nevada law, if a pre-incorporation contract made by a promoter is within the corporate powers, the corporation may, when organized, expressly or impliedly ratify the contract"); *see also Rasmussen v. Lopez*, No. 53738, 2011 WL 6916424 (Nev. Dec. 27, 2011) (interpreting and applying the terms of a pre-incorporation agreement); *cf. Hotel Last Frontier Corp. v. Universal Match Co.*, 358 P.2d 896 (1961) (affirming that a pre-incorporation agreement did not bind a party only because the evidence showed that the party did not consent to the agreement). Here, according to Plaintiffs, the contracts underlying this suit

> were negotiated by Plaintiff Dan de la Garza, a director of Janus Energy Resources, Inc. Janus Energy Resources, Inc., has thus been aware of the agreements since its inception as a business entity and, indeed, was created with the purpose of carrying out these agreements. This fact is memorialized in paragraphs 3 and 4 of the Promoter's Agreement, wherein it specifies that the product would be licensed "to 'Janus Energy Resources' a Nevada Corporation (to be formed)." Janus Energy Resources has fully ratified these agreements. . . .

(Doc. 5 at 3 (quoting the Promoter's Agreement)). These factual allegations justify Janus's personal stake in the controversy and its invocation of the judicial process. In this case, that process belongs in state court.

## IV.    Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiffs' motion is granted and this case **REMANDED** to the 164th Judicial District Court of Harris County, Texas.

SIGNED at Houston, Texas, this 20th day of March, 2013.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE